Ivah F. Catlow
vs.
Albert Catlow
}
Div. No. 23220.

## DECISION.

(February 11, 1930.)

FROST J. Heard on petition for absolute divorce on ground of extreme cruelty.

Petitioner has filed a bill of particulars in which are set out various acts of alleged cruelty. For convenience in discussion these may be grouped as follows:

a. Acts of physical violence.

b. Failure to provide a proper bed or couch for petitioner.

c. Failure to provide petitioner with sufficient funds to secure medical attention.

d. Frequently interrupting the sleep of petitioner during the night.

e. Threatening petitioner with bodily harm.

f. The use of profane language.

g. Failure to provide proper food for petitioner.

The parties to this proceeding were married in 1917. Petitioner is now 49 years of age. She and her first husband, by whom she had four children, were divorced. Respondent is now about 68 years old and in 1925 suffered a shock. Petitioner is his second wife. By his first wife he had five children, whose ages in 1917 ranged from 6 to 17 years.

Respondent, according to the evidence, neither drinks, chews nor smokes. He works steadily, earns $30 a week, and is given an excellent name by his superintendent who has known him for about 25 years.

Petitioner weighs 176 pounds and is a woman of strong dominating personality. There is evidence that she is a good housekeeper and has been a good mother to her husband's children.

The first and chief act of physical violence testified to dates back to 1923 when the parties were living on a farm in Glocester. It is asserted that

the respondent left the room and that petitioner attempted to close the door and that then respondent rushed back and struck his wife. He denied this and said that his wife and her sister attempted to keep him out of a room that he had a right to go into. It would seem that this act of cruelty, if it was such, was condoned. It is difficult for the Court to find in it anything more than a display of temper which does no credit to either of the parties.

There is another incident testified to in which petitioner asserts that while she was lying on the floor her husband kicked her. This he denied and since he admittedly did not have his shoes on, it does not seem that this could have amounted to much.

Petitioner has not slept in the same bedroom with respondent since July 6, 1924. She says that her husband told her to get out and stay out and that as a result she slept on the floor all that summer until she purchased a couch in the early fall and thereafter slept on that. Respondent asserts that his wife left his bed of her own accord. Whatever the reason for leaving his bedroom, petitioner was handling the family funds at that time and it would seem that she could have purchased a couch at once had she cared to do so.

Petitioner testified that her husband had not furnished her with sufficient funds whereby she could secure medical attention. She has, however, had medical attention and it does not appear that respondent made any attempt to prevent her having such attention and it would seem to follow that he became liable for such reasonable medical services as were incurred.

Mrs. Catlow testified that her husband frequently came into her bedroom at one or two o'clock in the morning and awakened her from sleep. He admitted having gone into her room at night but denied that he had done so frequently or that he had acted in an offensive manner. Mr. Catlow is a man well along in years and is working and has worked steadily. It seems remarkable that he should have deprived himself of sleep at those hours of the night except on rare occasions. Particularly is this so when Mrs. Catlow says that she went to his room whenever he desired her to do so.

There is testimony that respondent threatened petitioner with bodily harm and that she was in fear of him. There seems to be, however, no adequate reason for this fear. Petitioner is a woman weighing 175 pounds at the time of the hearing and 207 pounds at a period somewhat prior to the hearing. She appears to be a woman of much force and will power, and it was testified to that she was the head of the household. The Court is unable to reach the conclusion that petitioner stood in fear of her husband.

Petitioner asserts that respondent was addicted to the use of profane language. Mr. Catlow's superintendent and also a fellow workman testified that respondent did not use profanity in the workshop and the Court has no doubt that these witnesses spoke the truth, but there is evidence from his own daughter, who apparently is on good terms with her father, that he did use profane language at times while at home and he himself admits this to a degree, but there is an absence of convincing testimony tending to show that this had such an effect upon petitioner as to constitute, under all the circumstances, an act of extreme cruelty.

Counsel for petitioner lays much stress upon the allegation that respondent failed to provide proper food for petitioner. The alleged failure applies particularly to the period from September 12, 1928, when the handling of the family purse was transferred from Mrs. Catlow to Mr. Catlow, to March 13, 1929, when petitioner ceased to live with respondent. Mrs.

Catlow, prior to this time for a period of perhaps four years, had been more or less under the care of her physician, who saw her about once a month. She was always nervous, according to the testimony of her own witness, Mrs. Viall. She had high blood pressure, a rapid heart, was nervous, and was considerably over weight. The doctor placed her upon a diet and brought about more or less improvement in her general condition and a reduction in her weight. She complained after her husband bought the food that he did not buy enough food and food that she could eat. The Court is unable from the evidence to conclude that there was a lack of food. It is possible that the food may not always have been that best adapted to the requirements of the petitioner and it is probable that respondent was not as sensitive to the dietary needs of his wife as a younger man might have been, but the Court is not convinced that there was a deliberate attempt on his part to prevent his wife from having the food that she needed.

The real trouble in this household seems to be a certain incompatibility, resulting in part from the difference in their ages. the romance of marriage is gone and there is an absence of sympathetic feeling, each for the other. The petitioner has her children and the respondent has his. Each has to a certain extent grown away from the other. It is to the credit of the petitioner that she has been a good mother to her husband's children and it would not appear that respondent has been wholly unmindful of petitioner's ability or unfair in according to her the results of this joint enterprise for it appears that she handled the family's income, which was considerable at times, up to September, 1928, and it also appears that their property is held jointly.

On September 12, 1928, some discussion arose relative to some item of income. Respondent made an inquiry of his wife and was told, "that was for her to know and for him to find out." Respondent then appears to have asserted his rights as head of the household and henceforth refused to hand his pay envelopes to his wife; a position legally unassailable although one that was perhaps unwise considering the capable manner in which the family finances had been handled. Petitioner, unwilling to yield to this loss of power, on the plea of lack of proper food withdrew from her husband's home in March of the following year.

After seeing the parties and their witnesses and hearing them all at considerable length, the Court thinks that petitioner has not proved her allegations of extreme cruelty with that preponderance of evidence that is required and the petition is therefore denied and dismissed.

For petitioner: A. J. Levy.

For respondent: Arthur Cushing, E. A. Ziegler, E. W. Bradford.